AF Approval N/A                                              Chief Approval SF

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO. 8:16-cr-365-T-35TBM

WILLIAM A. DENNIS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and Tom Wheeler, Acting Assistant Attorney General for the United States Department of Justice Civil Rights Division, and the defendant, WILLIAM A. DENNIS, and the attorney for the defendant, Lyann Goudie, Esq., mutually agree as follows:

**A.   Particularized Terms**

   1.   Count Pleading To

   The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy against rights, in violation of 18 U.S.C. § 241.

   2.   Maximum Penalties

   Count One is punishable by a maximum term of imprisonment of ten (10) years, a fine of up to $250,000, up to three (3) years of supervised

Defendant's Initials WD

release, and a special assessment of $100.00 due at sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offense(s), the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First: there was a conspiracy or agreement between two or more persons that the defendant knowingly joined, intending to accomplish its purpose;

Second: the purpose of the conspiracy or agreement was to injure, oppress, threaten, or intimidate a person in the free exercise and enjoyment of a right protected by the Constitution and laws of the United States, including the right to own, rent, or occupy a dwelling free from threats and intimidation; and

Third: the planned interference with the protected right was willful.

Defendant's Initials WD                    2

4. <u>Counts Dismissed</u>

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and the Civil Rights Division agree not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office and the Civil Rights Division at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials WV                                    3

7. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

Defendant's Initials WD               4

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**B.     Standard Terms and Conditions**

    1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special

Defendant's Initials WP              5

assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any

Defendant's Initials WO                 6

misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information

Defendant's Initials WD                                7

concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials W P          8

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida and Civil Rights Division Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the United States Department of Justice Civil Rights Division, and cannot bind

Defendant's Initials WQ                9

other federal, state, or local prosecuting authorities, although these offices will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the

Defendant's Initials WD          10

right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

From at least as early as in or around August 2012 and continuing through at least in or around 2014, the defendant, William A. Dennis, a white man, was living in a house on Seward Drive in Port Richey, Florida, within the Middle District of Florida. During the time relevant to the indictment, other individuals residing on Seward Drive included co-conspirators Thomas Herris Sigler, III ("Sigler") and J.S., both of whom are also white men. The neighborhood was a predominantly white community.

On September 1, 2012, K.L., a white woman, entered into a lease agreement to rent a house located at 7209 Seward Drive, next door to Sigler's residence and across the street from Dennis' residence. At that time, K.L. was dating D.M., a black man, who lived on a street within a short walking distance of Seward Drive. On account of their relationship, D.M. frequently visited and stayed over at K.L.'s house on Seward Drive. Almost immediately, K.L. and D.M. began experiencing aggressive behavior and harassment from certain neighbors, including Dennis, Sigler, and J.S. Dennis and Sigler frequently yelled racial slurs, including calling D.M. a "nigger." On October 10, 2012, Sigler physically attacked D.M. while D.M. was walking on Seward Drive; Dennis told a neighbor to "mind [his] own fucking business" when that neighbor tried to intervene. Due to the constant

Defendant's Initials WD                    12

harassment and concern for K.L.'s safety, D.M. moved into 7209 Seward Drive.

By October 31, 2012, co-conspirator Pascual Carlos Pietri ("Pietri") was living with Sigler on Seward Drive. On the morning of October 31, Sigler told neighbors, including Dennis, that he was "tired of that nigger," referring to D.M., and that "something is gonna happen tonight." Dennis responded to Sigler's threats by trying to agitate him into action. While making these remarks about D.M., Sigler pulled a pistol from a vehicle in his driveway and held it up, saying words to the effect that he was going to "get him," referring to D.M. Sigler then put the pistol back in the vehicle and drove off.

In the evening of October 31, 2012, co-conspirator J.S. hosted a Halloween party at his residence on Seward Drive. Dennis, Sigler, Pietri, and other neighborhood residents attended the party. While at the party, Dennis and Sigler talked about D.M., calling D.M. a "nigger," and proposed a plan to "burn a cross on this nigger's property." Sigler asked J.S. for wood. J.S. agreed and walked Sigler through J.S.'s backyard, where Sigler and J.S. retrieved several pieces of wood from J.S.'s wood pile and carried them to J.S.'s side yard. In the side yard, Dennis and Sigler used the wood to build a cross, using nails and tools obtained from J.S. After the cross was completed,

Defendant's Initials WD                13

Dennis retrieved gasoline from J.S. and poured it on the cross. Dennis instructed Pietri to help him transport the cross to the front yard of K.L.'s and D.M.'s property. Dennis and Pietri then carried the cross across the street to K.L.'s and D.M.'s property and leaned it upright against K.L.'s and D.M.'s mailbox. Dennis then instructed Pietri to light the cross on fire, which Pietri did.

At the time of his participation in the conspiracy, Dennis knew that, historically, burning crosses has served to intimidate and threaten black persons. Moreover, Dennis knew that the purpose of the racial slurs aimed at D.M., the physical attack on D.M., the threats to D.M.'s safety, and the building and burning of the cross in K.L.'s and D.M.'s front yard was because the conspirators did not want D.M. living in the neighborhood because D.M. was black.

After the cross burning that occurred on Seward Drive on October 31, 2012, the Federal Bureau of Investigation ("FBI") opened an investigation because a violation of civil rights is a matter within the jurisdiction of the FBI. As part of its investigation into the cross burning, two FBI special agents interviewed Dennis at his house on Seward Drive on March 27, 2014. During the FBI's interview, Dennis knowingly and willfully made several materially false statements to the FBI. First, Dennis falsely

Defendant's Initials WD                 14

claimed that he and his sister spent the afternoon and evening of October 31, 2012, away from Seward Drive and did not return to his house until around midnight. As Dennis knew, he spent the evening of October 31, 2012, at the Halloween party at J.S.'s house, where the conspirators planned the offense and built the wooden cross. Second, Dennis claimed to the FBI that when he arrived home that night, Sigler informed him that a cross had been burned in D.M.'s yard and that Dennis had "missed all the action." This statement was false because Dennis participated in the planning, construction, transport, and lighting of the wooden cross. Third, Dennis stated that he did not see the burning cross and did not know who burned the cross. These statements were also false. In fact, Dennis handed Pietri a lighter to ignite the wooden cross and saw it burn. Fourth, Dennis falsely represented to the FBI that he did not know anything about the cross burning until he heard about it after arriving home. To the contrary, Dennis participated in every aspect of the cross burning offense, from planning it and building it to helping light it.

Dennis' false claims were material because they went to the heart of the FBI's investigation of the cross burning and the violation of D.M.'s and K.L.'s civil rights. Altogether, Dennis' false statements concealed the identities of the responsible parties, the source of the materials for the

Defendant's Initials WP                    15

construction of the wooden cross, the location where the cross was built, and the witnesses to and reasons for the cross burning.

The above is merely a brief summary of some of the events and persons involved and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials WG       16

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 22nd day of March, 2017.

W. STEPHEN MULDROW
Acting United States Attorney

TOM WHEELER
Acting Assistant Attorney General
Civil Rights Division

_____
WILLIAM A. DENNIS
Defendant

_____
JOSEPHINE W. THOMAS
Assistant United States Attorney

_____
LYANN GOUDIE, ESQ.
Attorney for Defendant

_____
WILLIAM E. NOLAN
Trial Attorney
Civil Rights Division

_____
SIMON A. GAUGUSH
Assistant United States Attorney
Chief, Economic Crimes Section

L:\_Cases\Criminal Cases\D\Dennis, William_2016R00738_JWT\p_Plea Agreement_Sigler.docx