UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO. 8:16-cr-365-T-35TBM

WILLIAM A. DENNIS

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and John M. Gore, Acting Assistant Attorney General, respectfully files this sentencing memorandum regarding Defendant William A. Dennis. The United States recommends that the Court sentence Defendant Dennis to 21 months of incarceration, the high end of the guidelines range, followed by 3 years of supervised release. As explained more fully below, this is an appropriate sentence in light of Dennis' criminal conduct in conspiring to violate the victims' civil rights, specifically their housing rights to hold and occupy property free from injury, intimidation, and interference because of race and color. Dennis' criminal conduct included burning a cross, as well as other intimidating actions, and then lying about his involvement to the federal agents investigating these crimes. A sentence of 21 months is "sufficient, but not greater than necessary, to comply with" the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2).

## I.     FACTUAL BACKGROUND

In August 2012 Defendant Dennis, a white man, was living in a house on Seward Drive in Port Richey, Florida. During that time, Thomas Herris Sigler, III ("Sigler") and J.S., both of whom are also white men, lived on Seward Drive near Defendant Dennis. The neighborhood was a predominantly white community.

On September 1, 2012, K.L., a white woman, entered into a lease agreement to rent a house located at 7209 Seward Drive, next door to Sigler's residence and across the street from Defendant Dennis' residence. At that time, K.L. was dating D.M., a black man. On account of their relationship, D.M. frequently visited and stayed over at K.L.'s house on Seward Drive. Almost immediately, K.L. and D.M. began experiencing aggressive behavior and harassment from certain neighbors, including Defendant Dennis, Sigler, and J.S. Defendant Dennis and Sigler frequently yelled racial slurs, including calling D.M. a "nigger." On October 10, 2012, Sigler physically attacked D.M. while D.M. was walking on Seward Drive, and Defendant Dennis told a neighbor to "mind [his] own fucking business" when that neighbor tried to intervene.

On the morning of October 31, 2012, Sigler told neighbors, including Defendant Dennis, that he was "tired of that nigger," referring to D.M., and

that "something is gonna happen tonight." Defendant Dennis responded to Sigler's threats by trying to agitate him into action. While making these remarks about D.M., Sigler pulled a pistol from a vehicle in his driveway and held it up, saying words to the effect that he was going to "get him," referring to D.M. Sigler then put the pistol back in the vehicle and drove off.

Later that evening, J.S. hosted a Halloween party in the driveway of his residence on Seward Drive. Defendant Dennis, Sigler, and other neighbors attended the party. While at the party, Defendant Dennis and Sigler talked about D.M., calling D.M. a "nigger," and proposed a plan to "burn a cross on the nigger's property." Sigler asked J.S. for wood. J.S. agreed and walked Sigler through J.S.'s backyard, where Sigler and J.S. retrieved several pieces of wood from J.S.'s wood pile and carried them to J.S.'s side yard. In the side yard, Defendant Dennis and Sigler used the wood to build a cross, using nails and tools obtained from J.S. After the cross was completed, Defendant Dennis retrieved the gasoline from J.S. and poured it on the cross. Defendant Dennis then instructed another man, Pascual Carlos Pietri ("Pietri"), who had been living with Sigler at the time, to help him transport the cross to the front yard of K.L.'s and D.M.'s property. Defendant Dennis and Pietri then carried the cross across the street to K.L.'s and D.M.'s property and leaned it upright against the mailbox. Defendant Dennis then instructed Pietri to light the cross on fire,

3

which Pietri did. After the cross burning, FBI Special Agents interviewed Defendant Dennis about the cross burning, and Defendant Dennis provided multiple false statements to the interviewing agents.

## II.     PROCEDURAL HISTORY

On August 16, 2016, a federal grand jury returned an indictment, then filed under seal, against Defendant Dennis for his role in the cross burning and subsequent false statements to the FBI. The indictment charged Defendant Dennis with two counts: (1) conspiracy against rights, in violation of 18 U.S.C. § 241, and (2) making false statements to the FBI, in violation of 18 U.S.C. § 1001.

On March 22, 2017, Defendant Dennis entered into a plea agreement, and on April 4, 2017, appeared before Magistrate Judge Thomas B. McCoun, III, to change his plea to guilty to Count One, conspiracy against rights. As part of the plea agreement, the United States agreed to dismiss Count Two, making false statements to the FBI, at the time of sentencing. This Court accepted Defendant Dennis' change of plea on April 19, 2017.

The same indictment charged Thomas Herris Sigler, III, with one count of conspiracy against rights, in violation of 18 U.S.C. § 241. Sigler also entered into a plea agreement, changed his plea to guilty, and is scheduled to be sentenced by this Court on the same day as Defendant Dennis. In a related

4

case, Pascual Carlos Pietri, pled guilty to one count of conspiracy against rights, in violation of 18 U.S.C. § 241, and this Court accepted Pietri's change of plea on July 1, 2015. This Court sentenced Pietri to 37 months imprisonment followed by 3 years of supervised release on March 23, 2016. See United States v. Pacual Carlos Pietri, 8:15-cr-00217-SCB-AEP.

### III. PLEA AGREEMENT

The United States and Defendant Dennis entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c), under which Defendant Dennis would plead guilty to Count One, and the United States would move to dismiss Count Two at the time of sentencing pursuant to Fed. R. Crim. P. 11(c)(1)(A). The United States further agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B), to recommend to the Court that Defendant Dennis be sentenced within the applicable guidelines range as determined by the Court pursuant to the Unites States Sentencing Guidelines. The United States agreed that Defendant Dennis would be eligible for a three-level downward adjustment under U.S.S.G. §§ 3E1.1(a) and (b) for the Defendant's acceptance of responsibility. The parties acknowledged that sentencing recommendations are not binding upon the Court, and that Defendant Dennis' sentence will be determined solely by the Court.

### IV.  PRESENTENCE INVESTIGATION REPORT ("PSR")

The U.S. Probation Office filed a PSR for Defendant Dennis on July 21, 2017.  The United States has no objection to any statements contained in the PSR.  Defendant Dennis lodged a series of objections to the PSR in a letter dated August 4, 2017.  The United States does not oppose the objections, but for two of note.  First, the Defendant claims that he did not encourage Sigler's attack on D.M., but this position is belied by the statement of facts in the plea agreement, in which Defendant Dennis admitted that he told a neighbor to "mind [his] own fucking business" when that neighbor attempted to intervene.  Such language indicates that Defendant Dennis at least aided Sigler's continued attack on D.M. without interruption.  Second, Defendant Dennis objected to the PSR's finding that no factors would warrant a variance from the advisory guideline system.  This objection is addressed below in Section V.B., History and Characteristics of the Defendant.

The PSR provided that Defendant Dennis's base offense level is 12, per U.S.S.G. § 2H1.1; that a 3-level increase applies because Defendant Dennis selected his victims based on their race, per § 3A1.1(a); a 2-level increase for Defendant Dennis' obstruction of justice per § 3C1.1; and that Defendant Dennis receive the benefit of a 3-level decrease for his acceptance of responsibility, per §§ 3E1.1(a) and (b).  The total offense level is 14.  The PSR

6

determined Defendant Dennis' Criminal History Category is I, for an advisory guideline range of 15 to 21 months.

## V.    18 U.S.C. § 3553 FACTORS

The Supreme Court has stated a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 50, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Then, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. Among the important factors are the nature and circumstances of the offense, the history and characteristics of the defendant, and relatedly, the impact of the crime on the victims. Based on the § 3553(a) factors, the United States submits that a sentence of 21 months, at the high end of the guidelines range, is appropriate for this defendant on these facts.

### A.    Nature and Circumstances of the Offense

The facts underlying the offense, described above, demonstrate the egregious nature of Defendant Dennis' crime. His actions were designed to terrorize his victims, put them in fear of bodily harm, and send the unmistakable message that because of D.M.'s race, the victims were not welcome to remain living in their own home on Seward Drive. In targeting

his victims based on the arbitrary characteristic of race, he invoked a long and deep history of racial violence.

Defendant Dennis conspired to burn a cross, as opposed to some other object, for a reason. In Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), the Supreme Court reviewed the history of cross burnings, observing, "when a cross burning is directed at a particular person not affiliated with the Klan, the burning cross often serves as a message of intimidation, designed to inspire in the victim a fear of bodily harm. Moreover, the history of violence associated with the Klan shows that the possibility of injury or death is not just hypothetical." Id., 538 U.S. at 357, 123 S.Ct. at 1546. "It is difficult to conceive of an intimidation case that could be easier to prove than one with cross burning, assuming any circumstances suggesting intimidation are present." Id., 538 U.S. at 386-87, 123 S.Ct. at 1562 (Souter, J., concurring in the judgment in part and dissenting in part). "In our culture, cross burning has almost invariably meant lawlessness and understandably instills in its victims well grounded fear of physical violence." Id., 538 U.S. at 391, 123 S.Ct. at 1564 (Thomas, J., dissenting); see also Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 770, 538 U.S. at 391, 123 S.Ct. at 1564 (1995) (Thomas, J., concurring) ("In Klan ceremony, the cross is a symbol of white supremacy and a tool for the intimidation and

8

harassment of racial minorities, Catholics, Jews, Communists, and any other groups hated by the Klan.").

Defendant Dennis then obstructed the FBI's investigation of this crime by lying to the investigating agents in order to conceal his involvement. The Defendant's obstruction contributed to the nearly 5-year period of time between the crime and the Defendant's sentencing hearing.

### B.   History and Characteristics of the Defendant

Although Defendant Dennis qualifies as a Criminal History Category I, this Court should consider other relevant facts about the Defendant, particularly his use of racial slurs as a means of verbal abuse and intimidation, when imposing sentence. Multiple witnesses interviewed by the FBI recalled Defendant Dennis' use of the word "nigger" directed at D.M., and the Defendant admitted as much as part of his plea agreement. Defendant Dennis' conduct in conspiring to burn a cross and then lying about it to the FBI to conceal his involvement show him to possess the characteristics of a violent racist and an obstructionist to law enforcement. There is no evidence that these characteristics have dissipated since the time of the crime, and every indication that such characteristics make Defendant Dennis a danger to society.

Defendant Dennis objected to the PSR's finding that no factors warranted a variance from the advisory guidelines system. In lodging this

objection, Defendant Dennis noted his age, lack of criminal history, and health issues that included diabetes and sleep apnea. Nothing, however, about the Defendant's age, criminal history, or health, prohibited him from conspiring to burn a cross and to intimidate a couple in their own home and neighborhood. Likewise, nothing about his age, criminal history, or health caused him to commit this crime. The characteristics and history cited by the Defendant are simply irrelevant, and do not warrant a variance from the applicable sentencing guidelines.

### C.   Impact of the Offense on the Victims

Defendant Dennis' conduct has had a substantial negative impact upon the lives of K.L. and D.M. For example, D.M. told the investigating agents that he was "fearful of walking past certain houses," and "prayed that all of the harassment would go away." D.M. expressed a feeling of helplessness because he thought if he "did anything in response to their harassment, he (D.M.) would go to jail." D.M. felt stress about K.L.'s constant worrying about him "getting hurt or someday killed" by Defendant Dennis and Sigler. D.M. explained the events and harassment to his out-of-state relatives, "in case anything happened" to him. K.L. worried about her safety and the safety of D.M., and grew frustrated and disheartened with the lack of response of the local law enforcement. It is impossible to quantify the fear, shock, and horror of

witnessing a burning cross. The Court's sentence cannot undo the harm caused by the Defendant's conduct, but it can begin to repair the betrayal, injustice, and abandonment felt by the victims of this crime.

## VI. CONCLUSION

In light of the foregoing considerations, the United States submits that the low end of the advisory guidelines range of 15-21 months is not appropriate in this case. A sentence of 15 months imprisonment would not adequately account for the severity of Defendant Dennis' criminal conduct, his history of racial animus (which, here, manifested in a threat of violence aimed at his neighbors), and the harm suffered by the victims.

The United States recommends that the Court impose a prison term of 21 months, to be followed by a three-year term of supervised release. Such a sentence would be "sufficient, but no greater than necessary," § 3553(a)(1), to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, § 3553(a)(2).

WHEREFORE, the United States respectfully recommends a sentence of 21 months imprisonment, to be followed by three years of supervised release.

        Respectfully submitted,

        W. STEPHEN MULDROW
        Acting United States Attorney

        JOHN M. GORE
        Acting Assisant Attorney General

By:  */s/ Josephine W. Thomas*
      JOSEPHONE W. THOMAS
      Assistant United States Attorney
      Florida Bar No. 31435
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602-4798
      Telephone:  (813) 274-6000
      Facsimile:  (813) 274-6358
      Email:  Josie.Thomas@usdoj.gov

      */s/ Simon A. Gaugush*
      SIMON A. GAUGUSH
      Assistant United States Attorney
      Florida Bar No. 0440050
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602-4798
      Telephone:  (813) 274-6000
      Facsimile:  (813) 274-6358
      Email:  Simon.Gaugush@usdoj.gov

      */s/ William E. Nolan*
      WILLIAM E. NOLAN
      Trial Attorney, Department of Justice
      Civil Rights Division
      950 Pennsylvania Avenue, N.W.
      Washington, D.C.  20530
      Telephone:  (202) 353-8560
      Facsimile:  (202) 514-8336
      Email:  William.Nolan@usdoj.gov

**U.S. v. William A. Dennis**          Case No. 8:16-cr-365-T-35TBM

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Lyann Goudie, Esq.
> Danny Hernandez, Esq.

> */s/ William E. Nolan*
> WILLIAM E. NOLAN
> Trial Attorney, Department of Justice
> Civil Rights Division
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C.  20530
> Telephone:  (202) 353-8560
> Facsimile:  (202) 514-8336
> Email:  William.Nolan@usdoj.gov