UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-cr-365-T-35TBM

THOMAS HERRIS SIGLER, III

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and John M. Gore, Acting Assistant Attorney General, respectfully files this sentencing memorandum regarding Defendant Thomas Herris Sigler, III. The United States recommends that the Court sentence Defendant Sigler to 41 months of incarceration, the high end of the guidelines range, followed by 3 years of supervised release. As explained more fully below, this is an appropriate sentence in light of Defendant Sigler's criminal conduct in conspiring to violate the victims' civil rights, specifically their housing rights to hold and occupy property free from injury, intimidation, and interference because of race and color. Sigler's criminal conduct included burning a cross, as well as other assaultive and intimidating actions. A sentence of 41 months is "sufficient, but not greater than necessary, to comply with" the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2).

## I.    FACTUAL BACKGROUND

In August 2012 Defendant Sigler, a white man, was living in a house on Seward Drive in Port Richey, Florida. During that time, William A. Dennis ("Dennis") and J.S., both of whom are also white men, lived on Seward Drive near Defendant Sigler. The neighborhood was a predominantly white community.

On September 1, 2012, K.L., a white woman, entered into a lease agreement to rent a house located at 7209 Seward Drive, next door to Defendant Sigler's residence and across the street from Dennis' residence. At that time, K.L. was dating D.M., a black man. On account of their relationship, D.M. frequently visited and stayed over at K.L.'s house on Seward Drive. Almost immediately, K.L. and D.M. began experiencing aggressive behavior and harassment from certain neighbors, including Defendant Sigler, Dennis, and J.S. Defendant Sigler and Dennis frequently yelled racial slurs, including calling D.M. a "nigger." On October 10, 2012, Defendant Sigler physically attacked D.M. while D.M. was walking on Seward Drive, and Dennis told a neighbor to "mind [his] own fucking business" when that neighbor tried to intervene.

On the morning of October 31, 2012, Defendant Sigler told neighbors, including Dennis, that he was "tired of that nigger," referring to D.M., and that

"something is gonna happen tonight." Dennis responded to Defendant Sigler's threats by trying to agitate him into action. While making these remarks about D.M., Defendant Sigler pulled a pistol from a vehicle in his driveway and held it up, saying words to the effect that he was going to "get him," referring to D.M. Defendant Sigler then put the pistol back in the vehicle and drove off.

Later that evening, J.S. hosted a Halloween party in the driveway of his residence on Seward Drive. Defendant Sigler, Dennis, and other neighbors attended the party. While at the party, Defendant Sigler and Dennis talked about D.M., calling D.M. a "nigger," and proposed a plan to "burn a cross on the nigger's property." Defendant Sigler asked J.S. for wood. J.S. agreed and walked Defendant Sigler through J.S.'s backyard, where Defendant Sigler and J.S. retrieved several pieces of wood from J.S.'s wood pile and carried them to J.S.'s side yard. In the side yard, Defendant Sigler and Dennis used the wood to build a cross, using nails and tools obtained from J.S. After the cross was completed, Dennis retrieved the gasoline from J.S. and poured it on the cross. Dennis then instructed another man, Pascual Carlos Pietri ("Pietri"), who had been living with Defendant Sigler at the time, to help him transport the cross to the front yard of K.L.'s and D.M.'s property. Dennis and Pietri then carried the cross across the street to K.L.'s and D.M.'s property and leaned it upright against the mailbox. Dennis then instructed Pietri to light the cross on fire,

which Pietri did.

## II. PROCEDURAL HISTORY

On August 16, 2016, a federal grand jury returned an indictment, then filed under seal, against Defendant Sigler for his role in the cross burning. The indictment charged Defendant Sigler with one count of conspiracy against rights, in violation of 18 U.S.C. § 241.

On March 7, 2017, Defendant Sigler entered into a plea agreement, and on March 10, 2017, appeared before Magistrate Judge Thomas B. McCoun, III, to change his plea to guilty to Count One, conspiracy against rights. This Court accepted Defendant Sigler's change of plea on March 27, 2017.

The same indictment charged William A. Dennis, with one count of conspiracy against rights, in violation of 18 U.S.C. § 241, and one count of making false statements to the FBI, in violation of 18 U.S.C. § 1001. Dennis also entered into a plea agreement, changed his plea to guilty to Count One, conspiracy against rights, and is scheduled to be sentenced by this Court on the same day as Defendant Sigler. In a related case, Pascual Carlos Pietri, pled guilty to one count of conspiracy against rights, in violation of 18 U.S.C. § 241, and this Court accepted Pietri's change of plea on July 1, 2015. This Court sentenced Pietri to 37 months imprisonment followed by 3 years of supervised release on March 23, 2016. See United States v. Pacual Carlos Pietri, 8:15-cr-

00217-SCB-AEP.

### III.　PLEA AGREEMENT

The United States and Defendant Sigler entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c), under which Defendant Sigler would plead guilty to Count One, conspiracy against rights. The United States further agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B), to recommend to the Court that Defendant Sigler be sentenced within the applicable guidelines range as determined by the Court pursuant to the Unites States Sentencing Guidelines. The United States agreed that Defendant Sigler would be eligible for a two-level downward adjustment under U.S.S.G. § 3E1.1(a) for the Defendant's acceptance of responsibility. The parties acknowledged that sentencing recommendations are not binding upon the Court, and that Defendant Sigler's sentence will be determined solely by the Court.

### IV.　PRESENTENCE INVESTIGATION REPORT ("PSR")

The U.S. Probation Office filed a PSR for Defendant Sigler on June 6, 2017. The United States has no objection to any statements contained in the PSR. Defendant Sigler did not file any objections to any statements contained in the PSR.

The PSR provided that Defendant Sigler's base offense level is 12, per U.S.S.G. § 2H1.1; that a 3-level increase applies because Defendant Sigler

selected his victims based on their race, per § 3A1.1(a); and that Defendant Sigler receive the benefit of a 2-level decrease for his acceptance of responsibility, per § 3E1.1(a). The total offense level is 13. The PSR determined Defendant Sigler's Criminal History Category is VI, for an advisory guideline range of 33 to 41 months.

## V.   18 U.S.C. § 3553 FACTORS

The Supreme Court has stated a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 50, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Then, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. Among the important factors are the nature and circumstances of the offense, the history and characteristics of the defendant, and relatedly, the impact of the crime on the victims. Based on the § 3553(a) factors, the United States submits that a sentence of 41 months, at the high end of the guidelines range, is appropriate for this Defendant on these facts.

### A.   Nature and Circumstances of the Offense

The facts underlying the offense, described above, demonstrate the egregious nature of Defendant Sigler's crime. His actions were designed to

terrorize his victims, put them in fear of bodily harm, and send the unmistakable message that because of D.M.'s race, the victims were not welcome to remain living in their own home on Seward Drive. In targeting his victims based on the arbitrary characteristic of race, he invoked a long and deep history of racial violence.

Defendant Sigler conspired to burn a cross, as opposed to some other object, for a reason. In Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), the Supreme Court reviewed the history of cross burnings, observing, "when a cross burning is directed at a particular person not affiliated with the Klan, the burning cross often serves as a message of intimidation, designed to inspire in the victim a fear of bodily harm. Moreover, the history of violence associated with the Klan shows that the possibility of injury or death is not just hypothetical." Id., 538 U.S. at 357, 123 S.Ct. at 1546. "It is difficult to conceive of an intimidation case that could be easier to prove than one with cross burning, assuming any circumstances suggesting intimidation are present." Id., 538 U.S. at 386-87, 123 S.Ct. at 1562 (Souter, J., concurring in the judgment in part and dissenting in part). "In our culture, cross burning has almost invariably meant lawlessness and understandably instills in its victims well grounded fear of physical violence." Id., 538 U.S. at 391, 123 S.Ct. at 1564 (Thomas, J., dissenting); see also

Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 770, 115 S.Ct. 2440, 2450, 132 L.Ed.2d 650 (1995) (Thomas, J., concurring) ("In Klan ceremony, the cross is a symbol of white supremacy and a tool for the intimidation and harassment of racial minorities, Catholics, Jews, Communists, and any other groups hated by the Klan.").

The conspiracy to burn a cross on the property of D.M. and K.L. was the culmination of a series of racially motivated harassment perpetrated by Defendant Sigler and his neighbors.  Defendant Sigler routinely used threatening language, including racial slurs, to intimidate D.M.  Weeks before the cross burning, Defendant Sigler physically attacked D.M.  And, on the morning of the cross burning, he brandished a handgun while declaring his intention to "get" D.M.

  **B.**  **History and Characteristics of the Defendant**

Defendant Sigler is a Category VI offender.  Since age 19, Defendant Sigler has amassed a consistent record of arrests and convictions, often for assaultive conduct.  He stands before the Court at 46 years of age unable to identify any significant period of his adult life when he was not interacting with the criminal justice system.  To say that Defendant Sigler is a danger to society is an understatement with grave consequences.  Nothing in Defendant Sigler's history or personal character suggest that he will not harm others again.

Witnesses interviewed by the FBI recalled Defendant Sigler's anger, physical abusiveness, use of racial slurs, abuse of drugs, and even referring to him as a "psychopath." Defendant Sigler's history and characteristics warrant a high-end guideline sentence.

### C. Impact of the Offense on the Victims

Defendant Sigler's conduct has had a substantial negative impact upon the lives of K.L. and D.M. For example, D.M. told the investigating agents that he was "fearful of walking past certain houses," and "prayed that all of the harassment would go away." D.M. expressed a feeling of helplessness because he thought if he "did anything in response to their harassment, he (D.M.) would go to jail." After Defendant Sigler physically attacked D.M., D.M. felt that if pressed charges, "his and [K.L.'s] problems with the neighbors would only get worse." D.M. and K.L. went so far as to install video cameras on their property after the assault.

D.M. felt stress about K.L.'s constant worrying about him "getting hurt or someday killed" by Defendant Sigler and Dennis. D.M. explained the events and harassment to his out-of-state relatives, "in case anything happened" to him.

K.L. worried about her safety and the safety of D.M., and grew frustrated and disheartened with the lack of response of the local law enforcement. It is

impossible to quantify the fear, shock, and horror of witnessing a burning cross. The Court's sentence cannot undo the harm caused by the Defendant's conduct, but it can begin to repair the betrayal, injustice, and abandonment felt by the victims of this crime.

## VI.    CONCLUSION

In light of the foregoing considerations, the United States submits that the low end of the advisory guidelines range of 33-41 months is not appropriate in this case.  A sentence of 33 months imprisonment would not adequately account for the severity of Defendant Sigler's violent criminal conduct, his Category VI criminal history, his history of racial animus (which, here, manifested in a threat of violence aimed at his neighbors), and the harm suffered by the victims.

The United States recommends that the Court impose a prison term of 41 months, to be followed by a three-year term of supervised release.  Such a sentence would be "sufficient, but no greater than necessary," § 3553(a)(1), to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, § 3553(a)(2).

WHEREFORE, the United States respectfully recommends a sentence of 41 months imprisonment, to be followed by three years of supervised release.

Respectfully submitted,

W. STEPHEN MULDROW
Acting United States Attorney

JOHN M. GORE
Acting Assisant Attorney General

By: */s/ Josephine W. Thomas*
JOSEPHONE W. THOMAS
Assistant United States Attorney
Florida Bar No. 31435
400 North Tampa Street, Suite 3200
Tampa, Florida  33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
Email:  Josie.Thomas@usdoj.gov

*/s/ Simon A. Gaugush*
SIMON A. GAUGUSH
Assistant United States Attorney
Florida Bar No. 0440050
400 North Tampa Street, Suite 3200
Tampa, Florida  33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
Email:  Simon.Gaugush@usdoj.gov

*/s/ William E. Nolan*
WILLIAM E. NOLAN
Trial Attorney, Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Telephone:  (202) 353-8560
Facsimile:  (202) 514-8336
Email:  William.Nolan@usdoj.gov

**U.S. v. Thomas Herris Sigler, III**      **Case No. 8:16-cr-365-T-35TBM**

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Lyann Goudie, Esq.
    Danny Hernandez, Esq.

    */s/ William E. Nolan*
    WILLIAM E. NOLAN
    Trial Attorney, Department of Justice
    Civil Rights Division
    950 Pennsylvania Avenue, N.W.
    Washington, D.C. 20530
    Telephone: (202) 353-8560
    Facsimile: (202) 514-8336
    Email: William.Nolan@usdoj.gov